V. ESTELLE FEHRENBACH, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF WILLIAM E. FEHRENBACH, DECEASED, APPELLANT, v. PENNSYLVANIA RAILROAD AND WEST JERSEY AND SEASHORE RAILROAD COMPANY, RESPONDENTS.

Argued October 26, 1928—Decided February 4, 1929.

For the appellant, *Edwin G. Scovel.*

For the respondents, *Bourgeois & Coulomb.*

The opinion of the court was delivered by

CAMPBELL, J. Jackson avenue is a public highway in the township of Berlin, in the county of Camden, crossing the tracks of the West Jersey and Seashore Railroad by an overhead bridge. Originally the crossing was at grade and at an angle of sixty degrees, but in 1902 this was changed to the present overhead crossing. In order to make such change the railroad company purchased lands on both sides of its right of way so as to provide for a proper ascent and descent to and from the overhead structure across its right of way, which structure crosses the right of way at right angles. The approaches on each side are parallel with the tracks, the one on the west side extending north from the overhead bridge, and the one on the east, south, and the grade of the approaches is six feet in one hundred feet.

On August 12th, 1919, the township and the railroad company entered into an agreement whereby the latter agreed to widen the approaches three and one-half feet, make certain repairs and renewals, and dedicate to the township the lands upon which the approaches were located, and the township

agreed to accept such dedication and thereafter maintain the approaches and relieve the railroad from such obligation.

The widening of the approaches and the repairs were made but no formal dedication of the lands occupied by such approaches has ever taken place by "delivery of a deed of dedication," as provided for in such agreement.

On July 5th, 1924, appellant's decedent was being driven in a motor car along Jackson avenue. The car approached the overhead bridge from the south, crossed the structure and then turned right to descend the approach leading from the north. The car had proceeded down this incline some fifty or sixty feet from the bridge, when, either in turning out for another vehicle, the loose and insecure ground of the approach gave way and the car and its occupants went over the embankment, or, because of the driver's losing control, the car was driven through the guard fence and over and down the embankment.

The result was that appellant's intestate received injuries from which he died, and appellant, as his administratrix *ad prosequendum*, brought suit for damages under the Death act.

At the close of the trial of the cause the trial court directed a verdict in favor of the respondents upon the ground that the statute placed a responsibility upon them only so far as the crossing or structure across their tracks or right of way was concerned, and that the approaches had been used as a public highway and that the public, acting through the township authorities, had accepted the maintenance thereof, and had, in fact, maintained them apart from any agreement between the railroad and the public.

The correctness of this ruling is attacked by the appeal from the judgment entered by such direction of the trial judge.

The obligation of the respondents, railroad companies, is to be found in *Comp. Stat., p.* 4231, § 26, which provides as follows:

"It shall be the duty of every railroad company owning, leasing or controlling any right of way for a railroad in this state, to construct and keep in repair good and sufficient

bridges and passages over, under and across the railroad or right of way where any public or other road, street or avenue now or hereafter laid, shall cross the same so that public travel on the said road shall not be impeded thereby  *  *  *."

The conclusion reached by us is that under this statute the obligation of the respondents extended not only to the bridge or structure over its right of way, but to the necessary and proper approaches thereto, for the reason that the construction of such overhead structure or bridge without the necessary and proper approaches would constitute an impediment and an obstruction rather than "sufficient bridges and passages thereover  *  *  *  so that public travel on said road shall not be impeded thereby."

Our attention is not called to any construction of this statute, but it seems appropriate to observe that with respect to bridges required to be constructed by boards of chosen freeholders it was held in *Freeholders* v. *Strader,* 18 *N. J. L.* 108, decided in 1840, that abutments and approaches were structures appurtenant to a bridge, and this has never since been questioned unless there was a specific legislative declaration to the contrary. In the opinion in that case there is the following, most appropriate, observation:

"The term a bridge conveys to my mind the idea of a passageway by which travelers and others are enabled to pass safely over streams and other obstructions. A structure of stone or wood which spans the width of a stream, but is wholly inaccessible at either end [whatever it may be in architecture], does not meet my ideas of what is meant in law and common parlance by a bridge.  *  *  *  But  *  *  *  such a construction as will compel those who make the bridge itself, to fill it up at its ends, so far as is necessary, to make it a convenient and safe passageway for the public, will, in my opinion, best conform to the course of legislation in this state, as well as to ancient principles of the common law."

The approaches are part of the "passages" across the right of way and a railroad company is obligated to maintain such approaches, and it is elementary that it cannot relieve itself of the obligation imposed by statute by entering into a con-

tract with a municipality, or any other party, by which the latter assumes such responsibility unless there be statutory authority therefor.

Respondents bring to our attention several statutes which they contend justify the making of such a contract as between the railroad and the township of Berlin, dated August 12th, 1919, and before referred to.

These statutes are: 3 *Comp. Stat., pp.* 4233, 4234, §§ 28, 29, 30; 3 *Comp. Stat., p.* 4258, §§ 89, 90; 3 *Comp. Stat., p.* 4266, § 114, and 1 *Cum. Supp. Comp. Stat., p.* 1299, § 11; *Pamp. L.* 1915, *p.* 98.

We find none applicable to the situation before us except, possibly, the last.

This is an amendment of section 30 of the General Railroad act of 1903 (3 *Comp. Stat., p.* 4234), *supra,* and authorizes municipalities and railroad companies to enter into contracts the effect of which will be to facilitate the construction or maintenance of other than grade grossings, thus securing greater safety to persons and property, and provides that "the cost and expenses of any such changes and improvements shall be borne by such municipality and such railroad company in such shares or proportions as may be provided in said contract." Whether the costs and expenses thus referred to are limited to the initial expenditures in making the changes and improvements as held in this court under *Pamph. L.* 1901, *p.* 116, in *Morris and Essex Railroad* v. *Newark,* 76 *N. J. L.* 555, or reach to and include the cost of subsequent maintenance, may be debatable. This, however, we are not called upon to decide. The contract in question between the township and the railroad company provides that after the latter has widened the approaches and performed the other works specified therein, it will deliver to the township a deed of dedication for the lands described and upon which the approaches are constructed; that the township will "accept said deed of dedication and will *thereafter* forever maintain said roadway, embankments and approaches up to the bridge abutment walls * * *."

Until the deed of dedication was delivered and accepted

the obligation to keep the approaches in repair rested upon the railroad company and not upon the township. No such deed of dedication was ever delivered by the railroad company to the township, and consequently, even if it is assumed that the statute of 1915, *supra,* authorized the making of the contract in question transferring the burden of maintenances of the approaches from the railroad company to the township, no such transfer of obligation, under the terms of such contract, had taken place at the time of the happening complained of, and consequently it was for the jury to determine whether such happening was the result of negligence of the railroad company to keep the approaches in proper repair and it was error to have directed the verdict upon which the judgment appealed from is based.

The remaining ground of appeal argued is directed at the admission in evidence of a resolution of the township committee of the township of Berlin, authorizing the execution of the agreement before referred to. In view of our findings upon the other ground of appeal this ground becomes unimportant.

The judgment below is reversed, with costs, and a *venire de novo* is awarded.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Trenchard, Parker, Campbell, Lloyd, White, Van Buskirk, McGlennon, Kays, Dear, JJ. 11.